IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KELCI STRINGER,** | : | |
| **Plaintiff,** | : | **Case No. 2:03-cv-665** |
| v. | : | **Judge Holschuh** |
| **NATIONAL FOOTBALL LEAGUE, et al.,** | : | **Magistrate Judge Abel** |
| | : | |
| **Defendants.** | | |
| | : | |

## MEMORANDUM OPINION AND ORDER

On July 10, 2009, this court granted in part and denied in part Riddell's motion for summary judgment. It granted summary judgment in favor of Riddell on Plaintiff's claims of design defect and breach of warranty, leaving only Plaintiff's failure-to-warn claim for trial. This matter is currently before the court on Riddell's motion for partial reconsideration (Doc. 135) and Plaintiff's subsequent motion for leave to respond to Riddell's reply memorandum (Doc. 143). The relevant facts are set forth in this court's July 10, 2009 Memorandum Opinion and Order (Doc. 100) and will not be repeated here.

**I.     Plaintiff's Motion for Leave to Respond**

Plaintiff Kelci Stringer seeks leave to respond to Riddell's reply brief. She maintains that Riddell argued for the first time in its reply brief that because the Vikings' trainers and coaches were not physically injured, it is irrelevant whether an appropriate warning would have changed their behavior. But as Riddell accurately point out, this argument was *not* raised for the first time in its reply brief. In its motion for partial reconsideration, Riddell argued that the court erred in assuming that a manufacturer's duty to warn extends to non-injured non-users of its products. Moreover,

Plaintiff has already responded to this argument. The court therefore **DENIES** Plaintiff's motion for leave to respond to Riddell's reply brief.

**II.     Riddell's Motion for Partial Reconsideration**

    **A.     Standard of Review**

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tennessee Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) (citing Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)). Federal Rule of Civil Procedure 54(b) states, in pertinent part, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

The court has "significant discretion" in considering a motion to reconsider an interlocutory order. See Rodriguez, 89 F. App'x at 959 n. 7. However, motions for reconsideration are not intended to be utilized to re-litigate arguments previously rejected by the court. See Reed v. Islamic Republic of Iran, 242 F.R.D. 125, 126 (D.D.C. 2007). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Rodriguez, 89 F. App'x at 959 (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

**B.     Discussion**

Riddell maintains that this court committed clear error in holding that Riddell, as a matter of law, had a duty to warn of the risk of heat exhaustion and heat stroke, and in extending the duty to warn to non-injured, non-users of the products, *i.e.,* the Vikings' trainers and coaches. "Clear error" is defined as a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Because the court finds nothing in its previous opinion that rises to that level, the court denies Riddell's motion for partial reconsideration.

**1.     Duty to Warn of Risk of Heat Exhaustion and Heat Stroke**

**a.     The Relevant Risk**

In its July 10, 2009 Memorandum Opinion and Order, the court held that, in determining whether Riddell had a duty to warn of the risks associated with using its equipment, the relevant risk was not the general risk of simply becoming hotter while wearing its equipment, but the more specific risk of developing heat exhaustion and heat stroke when wearing this equipment during extremely hot and humid conditions and while engaged in strenuous exercise. (Mem. Op. & Order at 11-12). The court concluded that because the danger of developing heat exhaustion and heat stroke under these circumstances was not obvious, and because it was reasonably foreseeable that a football player could suffer heat exhaustion and heat stroke while wearing the helmet and shoulder pads during extremely hot and humid conditions and while engaged in strenuous exercise, Riddell had a duty to warn as a matter of law. See Germann v. F.L. Smithe Mach. Co., 395 N.W.2d 922, 924 (Minn. 1986) (holding that the question of whether a manufacturer has a duty to warn is a question of law to be decided by the court).

In its motion for reconsideration, Riddell rehashes the same arguments the court previously rejected -- that the only relevant risk is merely the risk of the football player getting hotter while wearing Riddell's equipment, and that because this risk is obvious, Riddell had no duty to warn. Riddell again relies on Holowaty v. McDonald's Corporation, 10 F. Supp.2d 1078 (D. Minn. 1998), in which the plaintiff argued that McDonald's had a duty to warn of the dangers of spilling hot coffee because, although the risk of suffering minor burns was obvious, the risk of more serious burns was not. The district court rejected this argument, holding that "[a]n alleged difference in the anticipated degree of danger does not make the risk associated with the use of the product any less obvious." Id. at 1085. Riddell maintains that, like Holowaty, this case involves nothing more than a "difference in the anticipated degree of danger," and that the risk of developing heat exhaustion and heat stroke is simply an extension of the obvious risk of getting hotter.

The court rejects this reasoning for the same reasons previously discussed. As was the case in Independent School District No. 14 v. AMPRO Corporation, 361 N.W.2d 138, 143 (Minn. Ct. App. 1985), the risk of developing heat exhaustion and heat stroke is "a different, more serious, and more unexpected danger" than merely the normal risk of getting hotter while wearing the equipment. A mere increase in body temperature while wearing this equipment in normal weather conditions, typically poses no significant risk of permanent physical damage because with rest and hydration, the body's temperature returns to normal. In contrast, wearing this equipment during extremely hot and humid conditions and while engaged in strenuous exercise poses a significant risk of heat exhaustion and heat stroke, serious illnesses that can cause major organ failure and even death, as it did in Stringer's case. This risk is clearly "different, more serious, and more unexpected" than the mere risk of getting hotter under normal weather conditions.

4

As the court previously explained, this case is more akin to Gamradt v. Federal Laboratories, Inc., 380 F.3d 416 (8th Cir. 2004) (applying Minnesota law), in which the court held that even though it may have been obvious that detonation of a black smoke grenade would cause minor breathing discomfort, it was not obvious that a person exposed to the smoke in an enclosed space could lose 60% of his aerobic lung capacity. The court therefore concluded that knowledge of the mere danger associated with minor smoke inhalation did not relieve the manufacturer of the duty to warn about foreseeable dangers associated with the use of the grenade indoors. Id. at 420-21. Although Holowaty is legitimately argumentative, the facts of that case -- including the product in question, the circumstances under which it was used, and the resulting damage -- are radically different from those involved in the present case. Riddell, in short, has failed to demonstrate that the court committed clear error in relying on Independent School District No. 14 and Gamradt in concluding that the relevant risk is the specific risk of developing heat exhaustion and heat stroke.

Riddell also argues that by defining the relevant risk as the risk of developing heat exhaustion and heat stroke, this court, in essence, held "that Minnesota law . . . requires manufacturers to warn about *all possible circumstances* in which a common product may be used, and *all conceivable consequences* of that use." (Mot. for Reconsideration at 4) (emphasis added). This, of course, is not what the court held. As the court has explained, a duty to warn exists only if the injury was *reasonably* foreseeable. See Balder v. Haley, 399 N.W.2d 77, 81 (Minn. 1987) (citing Germann, 395 N.W.2d at 924)); Westerberg v. School Dist. No. 792, 148 N.W.2d 312, 317 (Minn. 1967) ("The duty to warn rests on foreseeability."). For the reasons previously stated, the court has concluded that, based on the evidence presented, the specific risk of developing heat exhaustion and heat stroke was reasonably foreseeable and was not obvious. Riddell therefore had

5

a duty to warn of that risk.

### b.     Proper Analysis of the Duty Element

As noted above, the question of whether a manufacturer has a duty to warn is a question of law to be decided by the court.  Germann, 395 N.W.2d at 924.  This is what both parties previously argued and, accordingly, the court held that, because the risk of developing heat stroke was reasonably foreseeable and was not obvious, Riddell had a duty to warn as a matter of law.  Riddell now argues, however, that the court committed clear error by making this determination prematurely.  It maintains now that duty cannot be determined as a matter of law unless fault and causation have already been established or are undisputed.  With respect to these issues, the court has found genuine issues of material fact which preclude granting Riddell's motion for summary judgment.

> In support of its argument, Riddell cites to the following language from Germann:
>
> [i]n determining whether the duty exists, the court goes to the event causing the damage and looks back to the alleged negligent act.  If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability.  On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists.

Id.  In the court's view, this language simply means that if the injury suffered by the plaintiff was reasonably foreseeable, then the manufacturer has a duty to warn as a matter of law.  If the injury was too remote to be reasonably foreseeable, then, as a matter of public policy, no duty should be imposed on the manufacturer.  See Foss v. Kincade, 746 N.W.2d 912, 916 (Minn. Ct. App. 2008).

Riddell, however, interprets this language in Germann to mean that, under Minnesota law, the test for the existence of a duty is actually the same as a test for proximate cause.  Riddell now argues, for the first time, that, in the present case, until "but for" and "direct" causation have been

6

established, the court cannot determine whether Riddell had any duty to warn of the dangers resulting from the use of its products.

Riddell's interpretation of Germann cannot be reconciled with fundamental, long-established, uniformly recognized legal doctrine. The inquiries concerning duty and proximate cause are completely separate. With respect to a duty to warn, the relevant question is whether the injury suffered by the plaintiff was reasonably foreseeable. In contrast, with respect to causation, the relevant question is whether the failure to warn was a substantial factor in bringing about the plaintiff's injury. George v. Estate of Baker, 724 N.W.2d 1, 10-11 (Minn. 2006). As the Minnesota Supreme Court held in Germann, duty is a question of law to be determined by the court.[1] In contrast, the issues of "adequacy of the warning, breach of duty and causation" are questions of fact that "*remain* for jury resolution." See 395 N.W.2d at 924-25 (emphasis added). Unless the court finds that a duty exists, there is no need for a jury to reach the question of causation.

In a similar vein, Riddell also argues that because the connection between the alleged failure to warn and Stringer's death is so remote, the court should find an *absence of duty* as a matter of law. Riddell maintains that Stringer's heat stroke was the result of a culmination of numerous factors, the vast majority of which were beyond Riddell's control. This argument clearly goes to the question of a causation, not duty. As the court previously held, the *duty* to warn stems from the conclusion that it was reasonably foreseeable that a football player wearing Riddell's equipment in extremely hot, humid weather could develop heat exhaustion and heat stroke. In contrast, whether the *failure* to warn played a substantial part in bringing about Korey Stringer's death or whether his

---

[1] To the extent that Riddell's citations to W. Prosser, Law of Torts (4th ed. 1971), § 42, are at odds with the established law as set forth in later cases by the Minnesota Supreme Court, e.g., in Germann, they are not persuasive authority.

death was solely the result of other factors unrelated to Riddell's equipment, is a question of fact that must be determined by a jury. It is simply not relevant to the legal question of whether Riddell had a *duty* to warn.[2]

Because the court finds no clear error in its previous ruling, the court denies Riddell's motion for reconsideration with respect to the issue of duty.

### 2. Causation

In its July 10, 2009 Memorandum Opinion and Order, with respect to the issue of causation, the court held that there was no evidence that Korey Stringer would have changed his own conduct had Riddell included an appropriate warning. The court found, however, that genuine issues of material fact precluded summary judgment on the question of whether a warning would have altered the conduct of the Vikings' trainers and coaches and prevented Korey Stringer's death.

In its motion for reconsideration, Riddell argues that, under Minnesota law, the duty to warn extends only to "reasonably foreseeable users" of the product. See Hauenstein v. Loctite Corp., 347 N.W.2d 272, 275 (Minn. 1984); Whiteford v. Yamaha Motor Corp., USA, 582 N.W.2d 916, 919 (Minn. 1998). Riddell maintains that since Korey Stringer was the end user of the equipment, and since the court has already found that a warning would not have changed Stringer's behavior, Plaintiff is unable to establish the requisite causation as a matter of law. Riddell argues that, in finding genuine issues of material fact concerning whether a warning would have prompted the Vikings' trainers and coaches to change their behavior and would have prevented Stringer's death,

---

[2] The fact that the Vikings had a duty to maintain a safe workplace and may have been negligent in not taking more precautions to prevent Stringer's death does not absolve Riddell of its own duty to warn of the risk of heat exhaustion and heat stroke while using its equipment in extremely hot and humid conditions.

the court implicitly and erroneously extended the duty to warn to non-injured non-users of the product.

The court rejects this line of reasoning. It is true that the duty to warn extends only to reasonably foreseeable users of the product. Moreover, an individual who suffers no injury has no standing to pursue a products liability claim. However, it does not follow that "non-injured non-users" can play no part in the causation analysis. If the manufacturer's failure to warn influenced the conduct of a third party, and that third party's acts or omissions were the proximate cause of the plaintiff's injury, then the manufacturer may be held liable. In fact, Riddell itself previously argued that causation could be established if a warning would have changed the behavior of either Korey Stringer *or* the Vikings' trainers and coaches. (Defs.' Mot. for Summ. J. 23-25; Defs.' Reply at 9).

Under Minnesota law, a third party's conduct is properly considered in determining causation where that party could have exercised control over the situation or acted to prevent injury. For example, in Erickson v. American Honda Motor Co., 455 N.W.2d 74 (Minn. Ct. App. 1990), the court upheld a jury verdict in favor of a 12-year old child who was injured when the ATV he was driving rolled over, causing severe head injuries. His aunt and uncle, who owned the vehicle, testified that if they had been warned of the dangers of operating the ATV, they would not have permitted their nephew to operate it. The court found sufficient evidence that the failure to warn was the proximate cause of the boy's injury. Id. at 78.

Likewise, where an employee is injured while using a product at work, Minnesota courts have held that a third party's conduct is both relevant and sufficient to establish causation on a failure-to-warn claim. In Germann v. F.L. Smithe Machine Co., 381 N.W.2d 503 (Minn. Ct. App. 1986), aff'd, 395 N.W.2d 922 (Minn. 1986), the plaintiff was an employee injured when his leg got

9

caught in the hydraulic press. The press was designed to have a guard bar which would prevent this injury, but the bar was not properly attached at the time of the accident. The court of appeals, in upholding the jury's verdict for the plaintiff on the failure to warn claim, explained that sufficient causation evidence was presented because the jury could have inferred either that the plaintiff would have heeded the warning and not operated the machine without the guard bar, *or* that maintenance personnel would have heeded the warning and re-installed or checked the safety bar on the machine so as to prevent injury. Id. at 509.

In Westbrock v. Marshalltown Manufacturing Co., 473 N.W.2d 352 (Minn. Ct. App. 1991), the employee plaintiff was injured while operating a mechanical punch press that he alleged lacked proper warnings. The trial court found that the plant manager would have ignored any additional manufacturer warnings, and concluded that plaintiff could not establish the requisite causation. The appellate court, however, noted that there was no evidence that the plaintiff would not have heeded additional warnings had they been provided. It therefore reversed the court's order rendering summary judgment in favor of the manufacturer on the failure-to-warn claim. Id. at 354, 359-60.

Implicit in these holdings is the fact that causation could be established by showing that an adequate warning would have altered the conduct of either the employee or the employer. These representative cases make it clear that causation may be established in a failure-to-warn case by showing that a non-injured, non-user would have altered his or her behavior in response to a warning, and that the change in behavior would have prevented the plaintiff's injury.

The two cases cited by Riddell in support of its argument that, under Minnesota law, product manufacturers have a duty to warn only foreseeable users of its products are not persuasive authority and are contrary to the Minnesota cases described above. In Hauenstein v. Loctite Corporation, 347

10

N.W.2d 272 (Minn. 1984), plaintiff was injured while using a bottle of liquid adhesive owned by a service garage where plaintiff was repairing his automobile. The product was available only through industrial product distributors and was not purchased or owned by the plaintiff. The bottle in question contained no warnings, but the product had a history of safe use.[3] Over 200,000 bottles had been sold with no reports of user injuries. The issues in the case were submitted to the jury under two theories of liability, negligence and strict product liability. The jury returned a special verdict in which the manufacturer was found to be negligent but the product was found not to be in a defective condition. The jury also found that the defendant's negligence did not cause plaintiff's injury. The defendant argued that these findings were not inconsistent because the duty to warn under a strict product liability theory extends only to the ordinary user of the product while the duty to warn under a negligence theory extends to all foreseeable users. The Minnesota court rejected this distinction and held that the duty to warn extended to all foreseeable users, including the plaintiff in that case who was not the owner or even the ordinary commercial user of the product.

In Whiteford v. Yamaha Motor Corporation, 582 N.W.2d 916 (Minn. 1998), plaintiff, a five-year-old boy, was injured when his toboggan collided with a stationary Yamaha snowmobile parked at the bottom of the hill. The court found that the defendant manufacturer was not required to anticipate or protect against this type of risk.

Both cases are clearly distinguishable from the present case, and neither involved the question of whether causation can be established in a failure-to-warn case by showing that a non-injured, non-user would have conducted himself in such a manner so as to prevent injury if proper

---

[3] Likewise, in the instant case, Riddell notes that Korey Stringer was the first professional football player to die of heat stroke while using Riddell's equipment.

warnings had been given about the product. The Erickson, Germann and Westbrook cases cited above did involve this question and were decided in a manner contrary to Riddell's argument.

In this case, the Vikings purchased Riddell's helmets and shoulder pads for the players, and the coaches and trainers exercised control over how these products would be used. They dictated when the equipment would be worn and what the players were required to do during the practice sessions. The court has already determined that genuine issues of material fact exist concerning whether a warning would have altered the conduct of the Vikings' coaches and trainers. Based on the evidence presented, a reasonable jury could find that the lack of warning played a substantial part in bringing about Korey Stringer's death.[4] It is irrelevant to the causation analysis that the coaches and trainers were non-injured, non-users.

For these reasons, the court finds no clear error in its previous ruling with respect to the issue of causation.

### III. Conclusion

For the reasons set forth above, the court **DENIES** Plaintiff's motion for leave to respond to Riddell's reply brief (Doc. 143). Because Riddell has failed to show that the court committed clear error, Riddell's motion for partial reconsideration (Doc. 135) of the July 10, 2009 Memorandum Opinion and Order is also **DENIED.**

---

[4] With an adequate warning, the coaches and trainers may have taken more precautions to prevent heat-related illnesses. They may have allowed the players to practice without the equipment, may have conducted less strenuous drills, or shortened the length of the practice sessions. They may have been more attentive to the symptoms of heat stroke that Korey Stringer was experiencing, pulled him from practice, and sought emergency medical assistance in a more timely fashion.

**IT IS SO ORDERED.**

Date: September 22, 2010                                **/s/ John D. Holschuh**
                                                       John D. Holschuh, Judge
                                                       United States District Court